SHIRK et al. v. ADAMS.*

(Circuit Court of Appeals, Seventh Circuit. April 12, 1904.)

No. 1,044.

1. LEASES—COVENANTS—BREACH—INSURANCE BY LESSOR—RECOVERY OF PRE-MIUMS—VOID POLICY.

Where an assignee of a lease containing a covenant against a sale of a building on the leased ground without the lessors' consent, and to insure such building, broke the covenant against the transfer, and on failure to procure insurance, after such breach, the lessors caused the building to be insured in the name of the assignee by policies stipulating that they should be void if the insured's interest in the property was other than unconditional and sole ownership, the policies being void for breach of such condition, the lessors were not entitled to recover premiums paid therefor, though it was subsequently held that the transfer by the assignee was ineffectual to free him from his assumption of the covenant in the lease.

2. SAME—MISSTATEMENT OF INTEREST—WAIVER.

Where a covenant in a lease required the lessee and his assigns to keep a building on the leased land insured, such covenant did not authorize the lessors to recover premiums for insurance procured by them, the validity of which rested on their ability to prove a waiver of a condition against a misstatement of insured's interest in the property.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

See 104 Fed. 54, 43 C. C. A. 407; 105 Fed. 659, 44 C. C. A. 653; 117 Fed. 801, 55 C. C. A. 25; and 121 Fed. 823, 58 C. C. A. 159.

Frederic Ullmann, for plaintiffs in error.
William Burry, for defendant in error.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge. In this action the Shirks had judgment against Adams for rent, taxes, assessments, and attorney's fees under the provisions of a lease that he had assumed; but they were defeated in their effort to recover the amount of certain insurance premiums paid by them, and this writ of error resulted.

The ground and the building thereon originally belonged to one Smith. He conveyed the ground to the Shirks, but reserved the title to the building. Thereupon the Shirks executed to Smith a lease of the ground. Among the covenants on the part of the lessee were

* Rehearing denied May 27, 1904.

these: That he would not assign the lease nor convey the building without the written consent of the lessors, that in case of loss or damage to the building he would repair or rebuild, and that he would keep the building insured.

Adams bought the building of Smith, and took an assignment of the lease, and, though he afterwards attempted to escape by transferring all his interest in the lease and in the building to a third party, it has been adjudicated that he became and remained bound for the performance of all the lessee's covenants. Adams v. Shirk, 104 Fed. 54, 43 C. C. A. 407; 105 Fed. 659, 44 C. C. A. 653; 117 Fed. 801, 55 C. C. A. 25.

On March 5, 1900, there being no insurance on the building in force, and Adams having failed and refused to take out any, the Shirks procured the insurance for which they paid the premiums now in question. They caused the policies to be written in the name of Adams, though they knew that Adams had theretofore executed and delivered written instruments in due form which purported to convey the building and assign the lease to another. The policies contained these conditions:

"It is understood that the title and interest of said assured is that of * * * owner of the building * * * insured hereby. * * * This entire policy shall be void * * * if the interest of the insured be not truly stated herein, * * * or if the interest of the insured be other than unconditional and sole ownership."

The court was right in excluding the question of premiums from the jury, if no valid insurance was procured, for, though Adams had covenanted to pay insurance premiums, he had not agreed to pay for what did not insure; and, although he was disclaiming any interest in the property described in the policies, he was deeply concerned, by reason of his covenant to rebuild, in the validity of the insurance contracts. The policies, by the terms thereof, were utterly void, if, when they were written, Adams was not the unconditional and sole owner of the building. He claims that the conveyance above referred to voids the policies. The Shirks, on the other hand, assert that the conveyance, having been made without their written consent, is a nullity, and that the relation of the parties is the same as if the instrument had never been written. In the former cases between these litigants, above cited, we have held that the transfer by Adams was ineffectual to free him from his assumption of the covenants of the lease, and that he was bound for the remainder of the term unless the Shirks should re-enter, or accept some one else as paymaster in his stead. Adams broke his covenant when he made the transfer. But a wrongful act is not a nonexistent one. A covenant not to do a thing really implies the power to do it. An assertion of a breach of covenant affirms that the covenantor has effectively done what he covenanted not to do. The statement in the policies that Adams was the unconditional and sole owner of the building was therefore untrue.

The Shirks insist, however, that the insurance is valid because the insurers' agents knew the true situation. Even if a false statement of title were a matter that could be waived or cured by an ordinary agent or broker, Adams's covenant should not be construed to cover pre-

miums for insurance procured by his adversaries, the validity of which rests on matters in pais, is open to dispute, and is subject to the frailties of human life and memory.

The judgment is affirmed.